**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
*In re Ex Parte* Application of FourWorld Event  :
Opportunities Fund, L.P. for an order, pursuant to 28  :    Case No. 22-mc-00330
U.S.C. § 1782, Granting It Leave To Obtain Discovery for  :
Use in Foreign Proceedings.                      :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITIONER'S *EX PARTE* APPLICATION FOR AN ORDER
## GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE
## <u>IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782</u>

Marc R. Rosen
Alisa Benintendi
**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**
500 Fifth Avenue
New York, New York  10110
Telephone: (212) 986-6000
Facsimile:  (212) 986-8866

*Attorneys for Petitioner FourWorld Event Opportunities Fund, L.P.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

    I.       Hembla and the Parties to the Legal Proceedings .................................................... 4

    II.      Vonovia's Squeeze-Out of Petitioner and the Unfair Buy-Out Price ..................... 4

    III.    The Companies Act and the Procedural History .................................................... 7

    IV.    Petitioner's Claims in the Legal Proceedings .......................................................... 8

    V.      The Limited Discovery Sought from JPM ........................................................... 11

ARGUMENT ...................................................................................................................... 12

    I.       Petitioner's Application Satisfies the Statutory Requirements of
           Section 1782 ........................................................................................................ 13

    II.      The *Intel* Factors Weigh Heavily In Favor of Petitioner's Application ............... 14

           A.     The Evidence from JPM Is Likely To Be Unobtainable Without the
                 Court's Assistance ....................................................................................... 15

           B.     The Stockholm District Court Would Be Receptive to Information
                 Obtained under Section 1782 ...................................................................... 16

           C.     Petitioner's Application Is Not a Bad-Faith Attempt To
                 Circumvent Swedish Proof-Gathering Restrictions ................................... 19

           D.     The Subpoenas Are Not Unduly Intrusive or Burdensome ....................... 20

                 i.      The Discovery Requests Are Narrowly Tailored. .......................... 20

                 ii.     The Location of the Documents Presents No Undue
                     Burden. ........................................................................................... 20

CONCLUSION ................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) ................................................................... 14

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
785 F.Supp. 2d 434 (S.D.N.Y. 2011) ...................................................... 14

*In re Al-Attabi*,
2022 WL 229784 (S.D.N.Y. Jan. 26, 2022) ............................................ 17

*In re Application of Mota*,
2020 BL 3148 (S.D.N.Y. Jan. 3, 2020) ................................................... 13

*In re Application of Republic of Kazakhstan*,
110 F. Supp. 3d 512 (S.D.N.Y. 2015) ..................................................... 18

*In re Application of Stati*,
2018 WL 474999 (D. Mass. Jan. 18, 2018) ............................................. 18

*In re ATM Fee Antitrust Litig.*,
233 F.R.D. 542 (N.D. Cal. 2005) ............................................................ 24

*In re Auto-Guadeloupe Investissement S.A.*,
2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) .......................................... 15

*Bayer AG v. Betachem, Inc.*,
146 F.3d 188 (3d Cir. 1998) ..................................................................... 2

*In re Belparts Group, N.V.*,
2021 WL 4942134 (D. Conn. Oct. 22, 2021) .......................................... 21

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) ......................................................... 2, 14, 18

*In re Catalyst Managerial Servs., DMCC*,
680 F. App'x 37 (2d Cir. 2017) .............................................................. 13

*Certain Funds, Accounts, and/or Inv. Vehicles v. KPMG, LLP*,
798 F.3d 113 (2d Cir. 2015) ................................................................... 17

*Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*,
21 N.Y.3d 55 (N.Y. 2013) ...................................................................... 22

*Matter of Degens*,
  2020 WL 4252725 (S.D.N.Y. July 24, 2020)................................................21, 24

*In re Del Valle Ruiz*
  342 F. Supp. 3d 448, 457 (S.D.N.Y. 2018) ...........................................................12

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) ................................................................................21

*Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*,
  2006 WL 1699566 (S.D.N.Y. June 20, 2006) .......................................................22

*In re Elvis Presley Enterprises LLC*,
  2016 WL 843380 (S.D.N.Y. Mar. 1, 2016) ...........................................................12

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ...........................................................13, 16, 17, 18

*In re Ex Parte Application of Nokia Corp.*,
  2013 WL 6073457, at *2 (N.D. Cal. Nov. 8, 2013) ..............................................12

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*,
  No. 21-mc-1019, ECF No. 40 (C.D. Cal. Nov. 22, 2021)......................................16

*In re Gemeinschaftspraxis Dr. Med. Schottdorf*,
  2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .................................................*passim*

*In re Godfrey*,
  526 F. Supp. 2d 417 (S.D.N.Y. 2007) ....................................................................3

*Gucci Am., Inc. v. Curveal Fashion*,
  2010 WL 808639 (S.D.N.Y. Mar. 8, 2010)............................................................22

*Gushlak v. Gushlak*,
  486 F. App'x 215, 217 (2d Cir. 2012) ...............................................................3, 12

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) .................................................................................15

*Heraeus Kulzer GmbH v. Esschem, Inc.*,
  390 F. App'x 88 (3d Cir. 2010).............................................................................15

*In re IKB Deutsche Industriebank AG*,
  2010 WL 1526070 (N.D. Ill. Apr. 8, 2010)...........................................................20

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  2020 WL 820327 (N.D. Cal. Feb. 19, 2020).........................................................25

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) .................................................................................*passim*

*Kiobel v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018) .............................................................. 3, 14

*In re Kuwait Ports Authority*,
2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ......................................... 21

*In re Liverpool Limited Partnership*,
2021 WL 3793901 (D. Del. Aug. 26, 2021) ............................................ 22

*Application of Malev Hungarian Airlines*,
964 F.2d 97 (2d Cir. 1992) .................................................................. 13

*Marubeni Am. Corp. v. LBA Y.K.*,
335 F. App'x 95 (2d Cir. 2009) ............................................................ 13

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ................................................................ 14

*In re Metallgesellschaft AG*,
121 F.3d 77 (2d Cir. 1997) ............................................................ 13, 14

*In re Microsoft Corp.*,
428 F. Supp. 2d 188 (S.D.N.Y. 2006) .............................................. 13, 15

*Minatec Fin. S.À.R.L. v. SI Grp. Inc.*,
2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ........................................ 19

*Motorola Credit Corp. v. Uzan*,
2013 WL 6098388 (S.D.N.Y. Nov. 20, 2013) .................................... 22, 23

*Pearson v. Univ. of Chicago*,
2021 WL 194725 (D. Conn. Jan. 20, 2021) ............................................ 16

*In re Porsche Automobil Holding SE*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ............................... 12, 17, 25

*Siemens AG v. Western Digital Corp.*,
2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) .......................................... 15

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ................................................................ 13

*In re Sveaas*,
249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................ 20

*Thomas v. City of New York,*
  336 F.R.D. 1 (E.D.N.Y. 2020) ................................................................... 16

*In re Top Matrix Holdings Ltd.,*
  2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) .......................................... 21, 22

*Union Fenosa Gas, S.A. v. Depository Tr. Co.,*
  2020 WL 2793055 (S.D.N.Y. May 29, 2020) ............................................. 21

**Statutes**

28 U.S.C. § 1782 ........................................................................... *passim*

Federal Rule of Civil Procedure 26 ..................................................... 1, 20

Federal Rule of Civil Procedure 30 ..................................................... 1, 25

Federal Rule of Civil Procedure 45 ......................................................... 1

17 C.F.R. § 210.1-02 ........................................................................ 24

Swedish Act on Public Takeover Offers on the Stock Market (2006), Chapter 3,
  Section 1 ..................................................................................... 5

Swedish Companies Act (2005), Chapter 22, Section 1 ............................... 7

Swedish Companies Act (2005), Chapter 22, Section 2 ............................... 8

Swedish Companies Act (2005), Chapter 22, Section 24 ............................. 8

Petitioner FourWorld Event Opportunities Fund, L.P. (the "Petitioner") respectfully submits this memorandum of law in support of its *ex parte* application, under 28 U.S.C. § 1782 and Rules 26, 30 and 45 of the Federal Rules of Civil Procedure, seeking limited discovery from respondent JPMorgan Chase & Co. ("JPM") for use in pending Swedish court proceedings (the "Legal Proceedings").

## PRELIMINARY STATEMENT

Petitioner is a litigant in the Legal Proceedings pending in the Stockholm District Court in Sweden, and requests permission to serve targeted discovery requests on JPM for use in the Legal Proceedings. In the Legal Proceedings, Petitioner seeks a determination of the proper buy-out price of its shares in Hembla AB ("Hembla") following the acquisition of the majority stock holdings in Hembla by Vonovia SE ("Vonovia") and its wholly owned subsidiary, HomeStar InvestCo AB ("HomeStar"), and in connection with HomeStar's subsequent, unconditional tender offer and the unfairly low price paid for all of the remaining stock owned by Petitioner and the other minority shareholders. This squeeze-out and the buy-out price were fundamentally unfair.

HomeStar, in the Legal Proceedings, wrongly seeks to value the Hembla shares based upon an artificial stock price notwithstanding that Hembla's listed stock price did not correspond to the fair value of Hembla's shares; the stock price was determined only by Vonovia and HomeStar and another party in a single transaction immediately preceding the tender offer; Vonovia and HomeStar had a conflict of interest with respect to the tender offer; the trading prices of Swedish real estate companies and the country's real estate indices significantly increased during the tender offer acceptance period, while Hembla's listed stock price remained artificially parked during this time period; there was no formal sale or auction process, and there were no opportunities to raise the non-negotiable tender offer bid; Handelsbanken Capital Markets ("Handelsbanken"), the independent valuation firm engaged by Hembla, and the independent bid committee formed by

Hembla's Board of Directors (the "Independent Committee"), both charged with evaluating HomeStar's bid price, concluded the buy-out price was unfair to Hembla shareholders and/or recommended that Hembla's shareholders not accept the offer; the bid premium in connection with the offer was very low compared to previous public takeover bids in Sweden; and the offer and its price were so unattractive to Hembla's minority shareholders that it resulted in a very low participation rate from minority shareholders. For these reasons, among others, Petitioner expects that the Stockholm District Court will rule that the redemption amount for Hembla's shares is not inextricably tied to the artificial stock price but rather corresponds to the fair value of Hembla's stock and to the share price that can be charged in a sale under normal circumstances.

By virtue of this application, Petitioner seeks narrowly tailored discovery from JPM, which, through its wholly owned subsidiary J.P. Morgan Securities plc ("JPMS"), served as the financial advisor to the architects of the squeeze-out and the unfair tender offer price, Vonovia and its subsidiary HomeStar, the majority shareholder and acquirer of Hembla. Petitioner seeks evidence from JPM concerning the process leading to the tender offer and the acquisition and with respect to the buy-out price of Hembla's shares, which are the dispositive issues in the ongoing Legal Proceedings. JPM is in possession, custody and control of this evidence.

Section 1782 empowers this Court to compel discovery from any entity that resides or is found in this judicial district for use in pending proceedings before a foreign tribunal. This statute's "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures." *Bayer AG v. Betachem, Inc.*, 146 F.3d 188 (3d Cir. 1998); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("The goals of [section 1782] are to provide 'equitable and efficacious' discovery procedures in United States courts . . . .'"). As described below, Petitioner's application satisfies the statutory requirements of

Section 1782. JPM is headquartered in this district; the requested discovery is for use in litigation in the Stockholm District Court; and, as a plaintiff in the Legal Proceedings, Petitioner is an interested person with standing to bring this discovery application. *See, e.g.*, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004); *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007); *In re Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006).

The factors set out by the United States Supreme Court in *Intel Corp.* also weigh heavily in favor of granting Petitioner's application: (i) the discovery sought is not within the foreign tribunal's jurisdictional reach because JPM is not a party to the Swedish court proceedings; (ii) there is no indication, let alone authoritative proof, that the Swedish court will be unreceptive to the discovery; (iii) Petitioner's application is a good-faith effort to obtain discovery from JPM, the financial advisor to Vonovia and HomeStar, to support Petitioner's claims in the Legal Proceedings; and (iv) the targeted discovery sought by Petitioner – narrow document discovery and a Rule 30(b)(6) deposition – relates to the buy-out price of the shares of Hembla and the squeeze-out of Petitioner and is neither unduly intrusive nor overly burdensome. The grant of this discovery application would further the "twin aims" of Section 1782, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018).

Petitioner's application is properly filed *ex parte*. As the Second Circuit has recognized, applications pursuant to Section 1782 often are filed *ex parte* because the entities from whom discovery is sought "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir.

2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").  This *ex parte* application does not prejudice the rights of JPM.

For all of these reasons and as set forth below, Petitioner respectfully asks that the Court grant this straightforward and important discovery application, and order JPM to produce the requested evidence in its possession, custody or control.

## FACTUAL BACKGROUND

### I.    Hembla and the Parties to the Legal Proceedings

Petitioner is a dissenting shareholder in the Legal Proceedings, and is an investment fund managed by FourWorld Capital Management LLC ("FourWorld"), a registered investment adviser.  Hembla is a real estate company that focuses on the ownership and development of rental residential properties in Greater Stockholm; through January 10, 2020, Hembla was a publicly traded company on the Nasdaq Stockholm, formerly known as the Stockholm Stock Exchange. Vonovia likewise is a German real estate company and is Europe's largest private real estate company for rental housing, and its subsidiary HomeStar (controlled in all respects by Vonovia) is the defendant in the Legal Proceedings.  *See* accompanying Declaration of Pontus Scherp (the "Scherp Decl."), at ¶¶ 2, 5-7.

JPM, through its wholly owned subsidiary, JPMS, was the financial advisor to Vonovia and HomeStar in connection with their acquisition of Hembla and their squeeze-out of Petitioner and the other minority shareholders, and was at the epicenter of this transaction.  JPM's principal place of business is 383 Madison Avenue, New York, New York 10179.  JPM is not a party to the Legal Proceedings.  *Id.* at ¶¶ 3, 8, 42.

### II.    Vonovia's Squeeze-Out of Petitioner and the Unfair Buy-Out Price

Vega Holdco S.á r.l. ("Vega") is a company wholly owned by real estate investment trusts which are advised by the Blackstone Group Inc. ("Blackstone"), a private equity firm.  Prior to

September 23, 2019, Vega was the majority shareholder of Hembla.  On September 23, 2019, Vonovia, advised by JPM and its subsidiary, announced in a press release that it had entered into an agreement with Blackstone, through Vonovia's wholly owned subsidiary HomeStar, to acquire Blackstone's entire shareholding in Hembla.  *See* Scherp Decl. at ¶¶ 9-10 and Ex. D.  HomeStar's purchase price for the Blackstone/Vega shares was equivalent to SEK 215 per share.  Vonovia's acquisition comprised 6,136,989 Class A shares and 50,722,985 Class B shares, representing approximately 69 percent of the voting rights and 61 percent of the share capital of Hembla.  *Id.* at ¶ 10.

After HomeStar completed the acquisition of Blackstone's shares following approval by the Swedish regulatory authorities, Homestar became legally obligated to make a public offer to acquire the shares of the other public stockholders of Hembla in accordance with the rules on mandatory bids in Chapter 3, Section 1 of the Swedish Act on Public Takeover Offers on the Stock Market (2006).  On November 7, 2019, HomeStar, still advised by JPM and JPMS, announced a tender offer to acquire all of the outstanding Class B shares in Hembla (the "Offer").  HomeStar's proposed price was the same as the consideration paid to Vega, SEK 215 per share.  HomeStar stated that the price would not be increased and that the Offer was not subject to any conditions.  *Id.* at ¶¶ 11-12.  On November 8, 2019, the Offer document was published, and the initial acceptance period for the Offer began on November 11, 2019 and ended on December 9, 2019.  *Id.* at ¶ 12 and Ex. F.  On December 10, 2019, HomeStar announced that it would hold 94 percent of Hembla's stock but, at the same time, extended the Offer until January 8, 2020.  *Id.* at ¶ 12 and Ex. G.

In connection with the Offer, Hembla's Board of Directors formed the Independent Committee.  The Independent Committee engaged Handelsbanken, a boutique investment banking

firm and subsidiary of Svenska Handelsbanken AB, to provide a fairness opinion in accordance with the Nasdaq Stockholm takeover rules (the "Takeover Rules").  *Id.* at ¶ 13.

On November 21, 2019, Handelsbanken issued its fairness opinion and concluded that the Offer was not fair to the Hembla shareholders (the "Fairness Opinion").  In the Fairness Opinion, Handelsbanken stated that, among other things, it "discussed the Hembla operations, financial position, profit development, strategy and future prospects with senior members of management of Hembla," "considered certain financial and stock exchange related information regarding Hembla in comparison with similar information regarding certain other companies with similar operations as well as comparable acquisition transactions," "[took] into consideration the share price development and trading activity in the Hembla share," and "performed such other analysis and studies which we have considered appropriate as a basis for this opinion."  Handelsbanken made clear that "[o]ur opinion is based on the Swedish regulatory system and upon current market, economic, financial and other conditions as well as information made available to us," and determined that "the offer as of the date hereof, from a financial point of view, is **not fair** to the Hembla shareholders."  *Id.* at ¶ 14 and Ex. H at 7-8 (emphasis added).

The same day, on November 21, 2019, consistent with the Takeover Rules, the Independent Committee reviewed "Hembla's current position and expected future development based on the Company's growth model and possibilities and risks related thereto" and other information, and issued its own opinion regarding the Offer's anticipated impact on Hembla.  The Independent Committee concluded that "[f]ollowing an overall assessment, the Committee is of the opinion that the Offer does not fully reflect Hembla's growth potential and value from a financial perspective.  In light of the above, and on the basis of the current state of the market and interest

rate level, the Committee therefore unanimously recommends Hembla's shareholders to **not accept** the Offer." *Id.* at ¶ 15 and Ex. H at 5 (emphasis added).

Notwithstanding the opinions by Handelsbanken and the Independent Committee, Vonovia, on December 18, 2019, announced that HomeStar had requested the compulsory redemption of the minority shares in Hembla and that Hembla had applied for delisting from the stock exchange; the Offer had not yet expired, but HomeStar, which already had majority ownership in Hembla, announced that it nevertheless had reached holdings in excess of 90 percent at this time. *Id.* at ¶ 16 and Ex. I. Hembla announced in a press release that on December 19, 2019, Nasdaq Stockholm had approved Hembla's application for delisting and determined that the last trading day for Hembla's stock would be January 10, 2020. *Id.* at ¶ 17 and Ex. J.

### III.    The Companies Act and the Procedural History

Under the Swedish Companies Act (2005), Chapter 22, where a majority owner commences a tender offer, "[a]ny person whose shares may be bought out shall be entitled to compel the majority shareholder to purchase his shares." *See* Companies Act, Ch. 22, at § 1, annexed to the Scherp Decl. as Ex. K. In the event of a dispute regarding the purchase price for the shares being bought out, "[t]he purchase price for a share shall be determined in such a manner that it corresponds to the price for the share which might be expected upon a sale under normal circumstances" and "[w]ith respect to a share which is traded on a Swedish or foreign exchange, an authorised marketplace or any other regulated market, the purchase price shall correspond to the listed value, unless special grounds otherwise dictate" (the "Listed Price Rule"). *Id.* at § 2. "The purchase price shall be determined taking into consideration the circumstances pertaining at the time . . . ." *Id.*

The Companies Act provides that a dispute concerning the amount of the purchase price shall be determined by arbitration, except that "[a] party or trustee who is dissatisfied with an

arbitral award in a buy-out dispute shall be entitled to commence proceedings before the Stockholm District Court . . . ." *Id.* at §§ 2, 24. An arbitral award in redemption proceedings may thus be appealed. The Stockholm District Court is empowered to review the arbitral award *de novo* and is not bound by any previous findings of the arbitral tribunal. The parties may also invoke new legal and factual grounds and adduce new evidence before the Stockholm District Court. Scherp Decl. ¶ 20. The Swedish legislators cautioned that "it is vital for the arbitration panel or court responsible for assessing a buy-out issue in the specific case, to carefully consider whether circumstances exist whereby the listed price is not an appropriate yardstick for the value of the share." Government Bill, Prop. 2004/05:85 at 451, annexed to the Scherp Decl. as Ex. M.

HomeStar commenced arbitration in accordance with the Companies Act. By arbitration award dated March 15, 2022, the arbitral tribunal ruled that since the Hembla share was traded on a regulated market and no special reasons justifying a deviation existed, the Listed Price Rule should be applied, and that minority shareholders, including Petitioner, should be paid only SEK 215 per share in connection with HomeStar's squeeze-out. Scherp Decl. at ¶ 21. Consistent with the Companies Act, on May 13, 2022, Petitioner timely filed a new, ongoing action in the Stockholm District Court against HomeStar – the Legal Proceedings – concerning valuation of Petitioner's Hembla stock holdings and seeking modification of the arbitration award. *Id.* at ¶ 22.

**IV.    <u>Petitioner's Claims in the Legal Proceedings</u>**

The determinative issue in the Legal Proceedings, in accordance with the Listed Price Rule, is whether there are special grounds for not applying Hembla's listed stock price in ascertaining the value of Petitioner's mandatorily redeemed shares, particularly since the stock price was completely unrelated to the significantly higher fair value of the Hembla shares for the reasons below.

First, the stock price for Hembla shares expressed a price that was determined only by and between two parties, HomeStar and Blackstone, in a single transaction. On September 23, 2019, HomeStar acquired 69.3 percent of the shares (votes) in Hembla at that price through a block purchase, which in turn triggered a bid obligation for all remaining shares in Hembla. From that date, the market knew that Homestar would subsequently acquire all of the remaining Hembla shares for SEK 215 through an unconditional public tender offer, seeking to compulsorily redeem the shares for the same exact price paid to Blackstone. Since the Blackstone sale, and because of that transaction, the Hembla shares had been priced on the stock exchange, and in connection with the Offer, based on the SEK 215 price per share paid by HomeStar to Blackstone. The listed share price remained at that price during the acceptance period and through the last day of trading, December 18, 2019 (the "Call Date"), with only minor fluctuations, until Hembla was delisted. Clearly, even as of the Call Date, the Hembla stock price artificially related only to the purchase price of Blackstone's shares and not to the stock market in general, the industry or Hembla's performance or other company-specific factors. Scherp Decl. at ¶¶ 25-26.

Second, the trading prices of Swedish real estate companies and the country's real estate indices significantly increased following the Blackstone transaction and the Call Date, and much more so than the low "premium" paid to Hembla shareholders. While real estate values climbed in Sweden, Hembla's stock price remained parked around the SEK 215 bid price during this time period. *Id.* at ¶ 27.

Third, the price of SEK 215 did not correspond to the real value of the Hembla share even at the time of the Blackstone transaction. The Blackstone deal concerned a large majority stake. Since it is difficult to sell such a large stake on the stock exchange without affecting the listed price, such a transaction requires a discounted sale price. This economic reality demonstrates that

the price of SEK 215 per Hembla share, in connection with the Blackstone transaction, likely is discounted in relation to the fair market value of the share.  *Id.* at ¶ 28.

Fourth, there was no formal sale or auction process leading up to the sale of Blackstone's Hembla shares, which is customary in the financial market and is used by a strategic seller or the board of the target company in order to obtain the best possible sale price.  In fact, HomeStar's acquisition of a block of shares from Blackstone made it impossible for another potential buyer to make a competing bid, which could have 'market tested' the bilateral price set by HomeStar and Blackstone.  *Id.* at ¶ 29.

Fifth, there were no opportunities to raise the bid.  HomeStar already indicated when the bid was announced that the Offer was unconditional and the price would not be raised, despite shareholders' public criticism of the bid price.  *Id.* at ¶ 30.

Sixth, HomeStar's bid price was not considered fair to Hembla shareholders according to Handelsbanken, the independent valuation firm, as detailed in its Fairness Opinion, and Hembla's Independent Committee, which unanimously recommended that Hembla's shareholders not accept the Offer.  *Id.* at ¶¶ 31-32 and Ex. H at 5, 7-8.

Seventh, the bid premium in connection with the Offer was very low compared to previous public takeover bids in Sweden.  *Id.* at ¶ 33.

Eighth and finally, the Offer and its price were so unattractive to Hembla's minority shareholders that they resulted in a very low participation rate from minority shareholders.  *Id.* at ¶ 34.

For the reasons detailed above, among others, Petitioner is confident that, following discovery, the Stockholm District Court will rule that the redemption amount for Hembla's shares is not inextricably tied to the artificial stock price and corresponds to the share price that can be

charged in a sale under normal circumstances, in accordance with the Companies Act and otherwise. As a matter of law, the Stockholm District Court's decision will trump the arbitrators' prior ruling. *Id.* at ¶ 52.

### V.    The Limited Discovery Sought from JPM

Petitioner seeks important discovery from JPM, including documents and testimony, narrowly tailored to the subject matter of the Legal Proceedings. *See* Proposed Subpoenas annexed to the accompanying Transmittal Declaration of Marc R. Rosen (the "Rosen Decl.") at Exs. 1 and 2. By way of example, the discovery sought by Petitioner principally concerns the valuation and buy-out price of Hembla shares, including the Blackstone transaction which set the stock price for Hembla shares, the determination of the Offer price and the other terms imposed on Hembla's minority shareholders, Homestar's conflict of interest as majority shareholder and purchaser of Hembla, the effect on Hembla's stock price by virtue of the Blackstone transaction, the informational asymmetry between Vonovia, HomeStar and their directors and advisors, on the one hand, and public investors, on the other hand, JPM's work as financial advisor to HomeStar and Vonovia, discussions of any alternative plans for Hembla at the time of the acquisition, JPM's knowledge of the evaluations of the Offer by the Independent Committee and Handelsbanken, JPM's communications concerning the Offer and HomeStar's acquisition, and the true, fundamental value of Hembla and its shares.

This discovery relates directly to the appraisal of Hembla's stock and whether there are special grounds for not applying Hembla's listed stock price in ascertaining the correct buy-out price of Petitioner's compulsorily redeemed shares, all at issue in the Legal Proceedings. Petitioner's targeted discovery requests are necessary for the prosecution of its claims at issue in the Legal Proceedings and are not unduly burdensome or intrusive.

## ARGUMENT

Petitioner's discovery application should be granted under 28 U.S.C. § 1782.[1]  "As a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation."  *In re Porsche Automobil Holding SE,* 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).  There are three statutory requirements which are met where, as here, "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery [is] for use in a proceeding before a foreign tribunal, and (3) the application [is] made by a foreign or international tribunal or any interested person."  *In re Elvis Presley Enterprises LLC*, 2016 WL 843380, at *2-3 (S.D.N.Y. Mar. 1, 2016) (quoting *Certain Funds, Accounts, and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)).

When these statutory requirements are satisfied, the U.S. Supreme Court has instructed that four factors should further guide a district court's analysis:

> (1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid; (2) [t]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) [w]hether the §1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) [w]hether the subpoena contains unduly intrusive or burdensome requests.

---

[1] Applications made pursuant to Section 1782 routinely are made on an *ex parte* basis and opposed, if at all, through a motion to quash.  *See, e.g., In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 457 (S.D.N.Y. 2018) ("[A]s a general matter, *ex parte* review is justified by the fact that the parties from whom discovery is sought will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it."); *Gushlak*, 486 F. App'x at 217\ (stating that it is not "uncommon" to proceed *ex parte* in the Section 1782 context); *In re Ex Parte Application of Nokia Corp.*, 2013 WL 6073457, at *2 (N.D. Cal. Nov. 8, 2013) ("It is common for parties to request and obtain orders authorizing discovery *ex parte*.").

*In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing *Intel*, 542 U.S. at 264-65).  These factors are non-exhaustive, and no "one factor [is] dispositive."  *See, e.g.*, *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 97 (2d Cir. 2009).[2]

## I.    Petitioner's Application Satisfies the Statutory Requirements of Section 1782

The statutory requirements are easily met in this case.

JPM is headquartered in Manhattan, so there can be no dispute that it is "found" in this district.  JPM's corporate headquarters are located at 383 Madison Avenue, New York, New York 10179.  *See* J.P. Morgan Chase & Co. Form 10-K dated February 22, 2022, for the fiscal year ended 2021 and filed with the U.S. Securities and Exchange Commission (the "JPM 10-K"), at cover page and 34, annexed to the Rosen Decl. as Ex. 3; *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)) ("[A]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business."); *In re Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) ("[Respondent] maintains its headquarters in New York, and thus is 'found' within this district."); *In re Application of Mota*, 2020 BL 3148, at *1 (S.D.N.Y. Jan. 3, 2020) (finding that "the discovery

---

[2] There is no requirement that the party seeking discovery pursuant to Section 1782 must first request discovery from the foreign tribunal.  *See In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017) (rejecting any purported requirement that "an applicant must first seek discovery abroad before bringing a § 1782 petition"); *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request."); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (describing "lack of exhaustion" as an "impermissible factor" in a Section 1782 analysis); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (overturning district court's denial of Section 1782 discovery where the district court imposed a "quasi-exhaustion requirement").

is sought from entities that are 'found' or reside in New York, New York, i.e. . . . J.P. Morgan Chase & Co.").

　　Petitioner plans to use the discovery sought in this application in connection with the Legal Proceedings pending in the Stockholm District Court in Sweden.  Scherp Decl. at ¶¶ 3-4, 36-39.  Consequently, Petitioner seeks this discovery "for use" in a foreign proceeding.  *See Gemeinschaftspraxis*, 2006 WL 3844464, at *4 (second statutory requirement met because "the requested discovery is sought for use in a foreign tribunal"); *In re Metallgesellschaft AG*, 121 F.3d 77, 79 ("[T]he information sought is for use in a proceeding before a foreign tribunal . . . .").[3]

Petitioner is an "interested person" under Section 1782.  "[L]itigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F.Supp. 2d 434, 438 (S.D.N.Y. 2011) (same).  Since Petitioner is a plaintiff in the Legal Proceedings (Scherp Decl. at ¶¶ 2, 22), it is an "interested person" under Section 1782 and has standing to bring this discovery application.

## II.    The *Intel* Factors Weigh Heavily In Favor of Petitioner's Application

As the Second Circuit has held, district courts assess the *Intel* factors in light of the twin aims of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *Kiobel*, 895 F.3d at 244.  In pursuit of these twin goals, "the statute has, over the years, been given 'increasingly broad applicability.'"  *Brandi-Dohrn*, 673 F.3d

---

[3] The district court considers "the *practical ability* of an applicant to place a beneficial document – or the information it contains – before a foreign tribunal."  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017); *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("for use" element satisfied if Section 1782 discovery materials can "be employed with some advantage or serve some use in the [foreign] proceeding").

at 80; *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010) (noting "courts' consistently liberal interpretation of the statute"). Here, the discretionary factors plainly weigh in favor of granting Petitioner's application for the targeted discovery needed to support its claims in the Legal Proceedings.

### A.    The Evidence from JPM Is Likely To Be Unobtainable Without the Court's Assistance

In applying the first factor, district courts look at "[w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach . . . ." *Microsoft Corp.*, 428 F. Supp. 2d at 192, 194 ("The relevant inquiry is whether the evidence is available to the foreign tribunal."). Ultimately, the critical consideration under this factor is whether evidence "may be unobtainable absent § 1782(a) aid" (*Intel*, 542 U.S. at 264), which is clearly the case here.

Neither JPM nor its wholly owned subsidiary, JPMS, is a party to the Legal Proceedings. *See* Scherp Decl. at ¶ 41. JPM's status as a non-party is important because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. In addition, the Swedish courts cannot compel JPM to produce documentary evidence or to testify at trial in Sweden since JPM, a non-party, headquartered in New York, is not within the jurisdiction of the Stockholm District Court. *See In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) (stating that where "the materials which [Petitioners] seek[ ] would be unavailable but for § 1782 assistance," the first *Intel* factor weighs in favor of granting the discovery application); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011) (finding that "[t]he importance of American-style discovery . . . is undeniable" where litigant could not secure discovery in foreign court); *Siemens AG v. Western Digital Corp.*, 2013 WL 5947973, at *3, *5 (C.D. Cal. Nov. 4,

2013) (asserting that "discovery under § 1782 need not mimic the discovery procedures of the foreign jurisdiction"); *see also Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions – reasons that do not necessarily signal objection to aid from United States federal courts."); Scherp Decl. at ¶¶ 41-42, 44.

Since Petitioner cannot obtain discovery from JPM in the Legal Proceedings, the first *Intel* factor weighs in favor of granting the discovery application.[4]

### B.    The Stockholm District Court Would Be Receptive to Information Obtained under Section 1782

Under the second *Intel* factor, a court determining whether to grant a Section 1782 petition "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In weighing this factor, courts typically focus on whether the foreign tribunal would be receptive to discovery procured with the assistance of a U.S. court pursuant to Section 1782. *See, e.g.*, *Gemeinschaftspraxis*, 2006 WL 3844464, at *6.

The Second Circuit has held that in determining the receptivity of foreign courts to Section 1782 discovery, district courts should avoid "speculative forays into legal territories unfamiliar to federal judges." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995)

---

[4] The mere existence of overlap and some duplication is insufficient to preclude the production of Section 1782 discovery. *See FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-mc-1019, ECF No. 40 (C.D. Cal. Nov. 22, 2021) (holding that petitioners are "entitled to, just as someone would be in conducting discovery in a regular civil case in the United States, to test two productions against each other and . . . to ask you for documents to ensure that . . . what they are getting from the Company is exhausted and vice versa"); *Thomas v. City of New York*, 336 F.R.D. 1, 2–3 (E.D.N.Y. 2020) (citing *Kenyon v. Simon & Schuster, Inc.*, 2016 WL 5930265, at *6 (S.D.N.Y. Oct. 11, 2016)); *Pearson v. Univ. of Chicago*, 2021 WL 194725, at *6 (D. Conn. Jan. 20, 2021) (citing *Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019)).

(cautioning courts against "try[ing] to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law"); *Certain Funds, Accounts, and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 122 n.11 (2d Cir. 2015) (observing that "district courts should avoid inquiring into foreign evidentiary rules . . . so as to keep the assessment of § 1782 applications from becoming a 'battle-by-affidavit of international legal experts'"); *Porsche*, 2016 WL 702327, at *8 ("The law on this factor is clear: 'District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would reject Section 1782 assistance.").

Instead, federal courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of [S]ection 1782" – proof that is "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa*, 51 F.3d at 1100. "The party opposing a Section 1782 application bears the burden of demonstrating that a foreign court would not be receptive to assistance from a U.S. court." *Porsche*, 2016 WL 702327, at *8; *In re Al-Attabi*, 2022 WL 229784, at *8 (S.D.N.Y. Jan. 26, 2022) ("Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would *not* be receptive to this assistance."). JPM cannot satisfy this burden.

The Swedish courts are receptive to the evidence sought in this application. "[T]he parties are free to adduce any evidentiary means . . . that, in their opinion, best support their case before the court . . . . This principle is supplemented by the principle of freedom to present one's case . . . , which means that a party is entirely free to choose how to make its case before the court; what claims to make; what factual grounds to plead in support of them etc. . . . There are no rules of evidence in Swedish law that specify what types of evidence are admissible or inadmissible.

17

Instead, parties choose what evidence to adduce in support of their case.  Under the principle of freedom to adduce evidence, there are essentially no restrictions to the evidentiary means that may be relied upon.  Similarly, judges' evaluation of evidence is also free and not bound by any legal rules . . . ."  *See* Scherp Decl. at ¶ 51 (quoting "The Swedish Legal System").  Likewise, "the Stockholm District Court is not bound by the prior arbitration award or any substantive, procedural or discovery-related findings or rulings made in the arbitral proceeding; the Swedish court will make its own findings of fact and law based on the evidence to be freely submitted by the parties in the now-pending Legal Proceedings."  *Id.* at ¶ 52; *see also id.* at ¶ 20.

Here, the second *Intel* factor supports granting Petitioner's discovery application.  The Stockholm District Court has provided no indication that it would be unreceptive to evidence obtained pursuant to Section 1782.  *Id.* at ¶¶ 45, 53.  Nor have there been any "judicial, executive or legislative declarations" (*Euromepa*, 51 F.3d at 1100) from the Swedish government or otherwise that discovery assistance from this Court would be unwelcome.  *Id.* at ¶ 46.  In fact, the federal courts have recognized that the Swedish government and its courts are receptive to Section 1782 discovery for use in Swedish legal proceedings.  *See, e.g., In re Application of Republic of Kazakhstan*, 110 F. Supp. 3d 512, 518 (S.D.N.Y. 2015) (holding that there was an "absence of authoritative proof that the Swedish tribunal would reject this [Section 1782] evidence"); *In re Application of Stati*, 2018 WL 474999, at *7 (D. Mass. Jan. 18, 2018) ("There is insufficient proof . . . that the foreign tribunals would oppose the discovery vis-à-vis the second factor. . . . [T]here is little reason to suspect that the Swedish, Netherlands, or Belgian tribunals would not be receptive to the discovered evidence.").[5]

---

[5] A petitioner on a Section 1782 application is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *See Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782

### C.    Petitioner's Application Is Not a Bad-Faith Attempt To Circumvent Swedish Proof-Gathering Restrictions

The third discretionary factor under *Intel* "aims to protect against abuse of § 1782 as a vehicle to end-run foreign proof-gathering restrictions or other foreign policies." *Gemeinschaftspraxis*, 2006 WL 3844464, at *7; *Intel*, 542 U.S. at 265. This factor asks whether the requesting party is "pursuing . . . discovery in bad faith." *Minatec Fin. S.À.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008). A party is not acting in bad faith merely because it seeks "to acquire discovery that it was unable to obtain abroad." *Gemeinschaftspraxis*, 2006 WL 3844464, at *7. Indeed, "in some respects, that is precisely the type of assistance that the statute was designed to afford." *Id.*

Here, the third *Intel* factor weighs in Petitioner's favor because Petitioner is seeking this discovery in a good-faith effort to establish the appropriate buy-out price of Petitioner's Hembla shares and related claims in connection with ongoing legal proceedings. JPM, the buyers' financial advisor, has important information concerning its own financial analysis and other work product and information, and is not subject to jurisdiction in Sweden and cannot be ordered to produce discovery in the Legal Proceedings. Petitioner thus is not seeking to circumvent Swedish proof-gathering restrictions, and this factor supports Petitioner's discovery application. *See Minatec*, 2008 WL 3884374, at *8 ("[W]e find nothing within this record to support that [the requesting party] is seeking this information with less than a good faith belief that § 1782 discovery would be helpful to the foreign tribunals and itself."); Scherp Decl. at ¶ 40.

---

application."). The Stockholm District Court will accept and consider any relevant evidence submitted by the parties, so long as it has a bearing on the determination on valuation and other issues being litigated in the Legal Proceedings.

### D.    The Subpoenas Are Not Unduly Intrusive or Burdensome

"The proper scope of the discovery sought under Section 1782, like all federal discovery, is governed by Federal Rule 26(b)," which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," to the extent that it does not cause any undue burden or expense.  *In re Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008); Fed. R. Civ. P. 26.  The discovery sought by Petitioner is not unreasonably intrusive or burdensome, satisfying the fourth *Intel* factor.  *See Intel*, 542 U.S. at 265.

#### i.    The Discovery Requests Are Narrowly Tailored.

Petitioner's discovery requests seek documents and testimony critical to its claims and the buy-out price issue being litigated in the Legal Proceedings, while avoiding unnecessary burden or intrusion on JPM.  This discovery is highly relevant to demonstrate that Hembla's stock price did not correspond to the price of Hembla's shares that could be charged in a sale under normal circumstances and did not correlate with the true, fundamental value of the shares, and that consequently there are special grounds for not applying Hembla's listed stock price in ascertaining the value and buy-out price of Petitioner's mandatorily redeemed shares.  *See* Scherp Decl. at ¶¶ 19-20, 37-39.  Although courts have confirmed that Section 1782 permits the same "broad discovery" as Federal Rule of Civil Procedure 26 (*see In re IKB Deutsche Industriebank AG*, 2010 WL 1526070, at *5 (N.D. Ill. Apr. 8, 2010)), the discovery requests are narrowly tailored to the claims and issues in the Legal Proceedings, in scope and time, and discovery is appropriate here. *See Gemeinschaftspraxis*, 2006 WL 3844464, at *8 (fourth factor weighed in favor of discovery where the "requests appear to be sufficiently tailored to the litigation issues").

#### ii.    The Location of the Documents Presents No Undue Burden.

To the extent evidence is located outside of the United States, the location of the documents in the possession, custody or control of JPM is immaterial on this Section 1782 application.  The

Second Circuit has held that documents located outside the United States are subject to discovery under Section 1782:

> [T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure in turn authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control. Hence § 1782 likewise allows extraterritorial discovery.

*In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019).

Following the Second Circuit's decision in *del Valle Ruiz*, courts in this circuit and elsewhere have ruled that Section 1782 reaches evidence located abroad. *See, e.g., In re Kuwait Ports Authority*, 2021 WL 5909999, at *11 (S.D.N.Y. Dec. 13, 2021) ("[If] there are documents located abroad, so long as they are in the possession, custody, or control of [the respondent bank], the extraterritorial discovery is permissible."); *Matter of Degens,* 2020 WL 4252725, at *5 (S.D.N.Y. July 24, 2020) (ordering production of information globally); *Union Fenosa Gas, S.A. v. Depository Tr. Co*., 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020) (declining "request to limit discovery to materials that are within the United States"); *In re Top Matrix Holdings Ltd.,* 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("[T]he Second Circuit recently made clear that discovery of evidence located extraterritorially can still be compelled under Section 1782."); *In re Belparts Group, N.V.*, 2021 WL 4942134, at *7 (D. Conn. Oct. 22, 2021) (concluding that petitioner "is not prohibited from obtaining discovery of documents located outside the United States under § 1782, including those documents that are also possessed by [respondent's] foreign affiliates"); *see also Gemeinshcaftspraxis,* 2006 WL 3844464, at *5 ("Section 1782 requires only that the *party* from whom discovery is sought be 'found' here; not that the *documents* be found here.").

There is no undue burden here, because JPM is in possession, custody or control of the requested documents. "The case law governing the application of subpoenas served on a parent corporation to its subsidiaries turns on a pragmatic understanding of 'control.'" *Motorola Credit Corp. v. Uzan*, 2013 WL 6098388, at *3 (S.D.N.Y. Nov. 20, 2013). "Indeed, various courts have interpreted 'possession, custody, or control' to allow for discovery from parties that had practical ability to request from, or influence, another party with the desired discovery documents." *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55 (N.Y. 2013) (cited by *Motorola Credit Corp.*, 2013 WL 6098388, at *3). Courts in this district frequently find that a parent entity has custody or control over documents in its subsidiary's possession. *See Motorola Credit Corp.*, 2013 WL 6098388, at *4 ("This pragmatic approach to understanding 'control' will often result in a finding that a parent corporation has, practically speaking, sufficient control over its subsidiaries to require that it search them in compliance with a subpoena served on the parent."); *Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 808639, at *7 (S.D.N.Y. Mar. 8, 2010) ("[A] parent company doing business in New York is required to produce documents held by its subsidiary, even if located overseas."); *Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*, 2006 WL 1699566, at *1 (S.D.N.Y. June 20, 2006) ("Numerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with this subsidiary.").[6]

---

[6] *See also In re Liverpool Limited Partnership*, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021) ("[B]ecause BAC is a Delaware corporation and the parent of BofA Securities, documents that 'reside' with BofA Securities are nonetheless in BAC's possession, custody, and control."); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *5 ("[T]hat information possessed by Credit Suisse USA is also likely possessed by Credit Suisse in Switzerland is not relevant. . . . [T]he court is not prohibited from compelling discovery of information in possession of both a parent company and its subsidiary . . . .").

JPM has possession, custody, or control over documents that are in the possession of JPM's overseas subsidiary, JPMS, since JPM, as the parent company, is responsible for the compliance, risk management, governance, and financial reporting operations of JPMS, and there is substantial overlap between the management executives of JPM and JPMS or the two companies share employees and utilize common practices and forums.  The specific relationship between JPM and JPMS has all the hallmarks of corporate control.

First, JPM is responsible for the compliance, risk management, governance, and financial reporting operations of its subsidiary, JPMS.  JPM consolidates JPMS's financial statements.  *See* JPMS 2021 Annual Report (the "JPMS Annual Report") at 78, annexed to the Rosen Decl. as Ex. 4.  Many of JPMS's policies and procedures, including risk management, market risk governance, and stress testing (*id*. at 31–34); compliance (*id.* at 43); sanctions (*id.* at 6); compensation (*id.* at 63); IBOR transition (*id.* at 10); security awareness training (*id.* at 42); climate change/environmental (*id.* at 3, 47); and other non-financial policies (*id.* at 50), are either set by, subject to the oversight of, align with, or mirror those of JPM.

 Second, there is managerial and other personnel overlap.  JPMS and JPM share a director, Timothy P. Flynn.  *See* JPM 10-K at 312, annexed to the Rosen Decl. as Ex. 3; JPMS Annual Report at 58.  In addition, a JPMS director, Daniel Pinto, also is a President and Chief Operating Officer of JPM.  *See* JPM 10-K at 37; JPMS Annual Report at 58.  There also is a "global Legal function . . . [that] provides legal services and advice to the Company [JPMS] and the Firm [JPM]."  JPMS Annual Report at 45.  JPM, therefore, has custody or control over discovery in the possession of JPMS.  *See also Motorola Credit Corp.*, 2013 WL 6098388, at *3 (finding parent bank had sufficient control over subsidiary bank to compel production where there was managerial overlap and "the parent had 'established basic principles for coordination of the activities of its

subsidiaries,' including 'a clear vision of a . . . global business, requiring cooperation and coordination among its many-parts.'").

Third, JPM is a "bank holding company" under the Bank Holding Act. *See* JPM 10-K at 4 ("JPMorgan Chase & Co. is a bank holding company ('BHC') and a financial holding company ('FHC') under U.S. federal law . . . ."). A bank holding company has legal control over its subsidiaries. Courts have ordered discovery on this basis, reasoning that "by federal statute, a bank holding company necessarily controls its subsidiary banks." *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005).

Fourth, JPMS is the wholly owned subsidiary of Respondent.[7] In that vein, in its 2021 UK Annual Report, JPMS stated that JPM is its "ultimate parent undertaking and controlling party." JPMS Annual Report at 78. Similarly, JPM stated in its 2021 Form 10-K that its "principal operating subsidiary outside the U.S. is J.P. Morgan Securities plc," and lists JPMS as one of its "significant legal entity subsidiaries" as defined by SEC rules. *See* JPM 10-K at 46 and Ex. 21. Further, JPM states in its 2021 Form 10-K that "[t]he Firm [i.e., JPM] conducts securities underwriting, dealing and brokerage activities. . . . In the U.K., those activities are conducted by J.P. Morgan Securities plc." *Id.* at 6.

In sum, JPM has possession, custody, or control over documents that are in the possession of JPMS, and there is no undue burden in producing them. The documents sought largely will be in electronic form, in English, and probably are accessible from the United States. *See Matter of Degens*, 2020 WL 4252725, at *5 ("Most if not all the records sought should be available

---

[7] Designating an entity as a "subsidiary" under SEC regulations means that the parent company has control over the entity. Under 17 C.F.R. § 210.1-02, "subsidiary" of a specified person is defined as "an affiliate controlled by such person directly, or indirectly through one or more intermediaries." 17 C.F.R. § 210.1-02. And "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting shares, by contract, or otherwise." *Id.*

electronically and therefore of little burden to access and produce.  Accordingly, requiring production of documents no matter where they are deemed to reside is appropriate in this case."); *Gemeinshcaftspraxis*, 2006 WL 3844464, at *8 ("The fact that the documents are located abroad, itself, is of little concern.  They can easily be shipped to . . . New York"); *see also Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) ("Respondents' concerns about producing documents located outside the United States is largely anachronistic . . . .").[8]

## **CONCLUSION**

For the foregoing reasons, this Court should grant Petitioner's application pursuant to 28 U.S.C. § 1782 and enter the proposed order authorizing service in Manhattan on JPM of the proposed subpoenas for documents and deposition testimony.

Dated: November 21, 2022

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By:_____

Marc R. Rosen
Alisa Benintendi

500 Fifth Avenue
New York, New York  10110
Telephone:  (212) 986-6000
Facsimile:  (212) 986-8866

*Attorneys for Petitioner*

---

[8] In addition, district courts have typically been "generous" in granting Rule 30(b)(6) depositions in Section 1782 matters.  *See Porsche*, 2016 WL 702327, at *13 (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable").  Here, a 30(b)(6) deposition of corporate representatives is appropriate and will significantly aid the Swedish court in understanding complex, relevant material.  If necessary, Petitioner is willing to depose any foreign-based witness remotely through an electronic platform, obviating any travel-related undue burden concerns.