UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────

*In re* Application of

FourWorld Event Opportunities Fund, L.P. for an order, pursuant to 28 U.S.C. § 1782, Granting It Leave To Obtain Discovery for Use in Foreign Proceedings.

22-MC-330 (JPO)

OPINION AND ORDER

────────────────────────────────

J. PAUL OETKEN, District Judge:

On November 21, 2022, Petitioner FourWorld Event Opportunities Fund, L.P. filed an *ex parte* motion for discovery pursuant to 28 U.S.C. § 1782, seeking to serve document and deposition subpoenas on Respondent J.P. Morgan Chase & Co. in pursuit of documents belonging to its wholly owned United Kingdom subsidiary, J.P. Morgan Securities plc, d/b/a Cazenove.[1] (ECF No. 1.) Petitioner's discovery request relates to Cazenove's role as a financial advisor in an acquisition that Petitioner alleges resulted in an impermissibly low buyout price for it and other minority shareholders. (ECF No. 1-2.) Pending before the Court is Respondent's motion to quash both subpoenas. (ECF No. 15.)

**I.  Background**

In January 2020, Homestar InvestCo AB, a Swedish wholly owned subsidiary of the German real estate company Vonovia SE, acquired the majority stock of Hembla AB, a Swedish real estate company. (ECF No. 1-2 at 4-5.) Cazenove served as financial advisor to Vonovia and Homestar in connection with the acquisition. (*Id.*) Cazenove is a U.K. financial advisory

────────────────────────────────

[1] Petitioner refers to this entity as J.P. Morgan Securities plc ("JPMS"), while Respondent refers to it as Cazenove. The Court refers to it as Cazenove for the purposes of this Opinion and Order.

1

firm and a wholly owned subsidiary of JP Morgan Chase & Co., which is itself a U.S. financial holding company with its principal place of business in New York City. (*Id.*)

Petitioner contends that the price offered to itself and other minority shareholders was fundamentally unfair. On March 15, 2022, a Swedish arbitration tribunal issued a decision finding that the listed price, 215 Swedish Kronor per share, was the proper buyout price. (ECF No. 15 at 5.) On May 13, 2022, Petitioner commenced a lawsuit in Stockholm District Court against Homestar on behalf of itself and other minority shareholders, again contesting the buyout price and asking that court to review the tribunal's decision. (ECF No. 1-2 at 8.) Petitioner now submits a proposed document subpoena and a proposed deposition subpoena (ECF Nos. 1-21, 1-22), each seeking discovery from J.P. Morgan Chase relating to the valuation and buyout price of the Hembla shares. According to Respondent, Petitioner has also made largely identical document requests in the Stockholm District Court, which remain pending. (ECF No. 15 at 5.)

## II.     Legal Standard

28 U.S.C. § 1782 provides that a district court may order a person within the district "to give his testimony or statement or to produce a document . . . for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." 28 U.S.C. § 1782(a). Section 1782(a) authorizes discovery to proceed in accordance with the Federal Rules of Civil Procedure, which in turn require a subpoenaed party to produce documents that are in its "possession, custody, or control." *In re Liverpool Ltd. P'ship*, No. 21-MC-392, 2021 WL 5605044, at *2 (S.D.N.Y. Nov. 24, 2021) (quoting Fed. R. Civ. P. 34(a)(1), 45(a)(1)(A)(iii)). If petitioner cannot satisfy its burden of establishing that the relevant information is within respondent's possession, custody, or control, the court's analysis need go no further. *Id.*

If the petitioner satisfies that threshold, the § 1782 analysis proceeds in two steps. First, the court must determine whether the application satisfies the three statutory requirements of

§ 1782: (1) that the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) that the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) that the application is made by a foreign or international tribunal or any interested person. *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022) (citation omitted).

Second, if the statutory requirements are met, the district court must consider the four discretionary factors that the Supreme Court enumerated in *Intel Corporation v. Advanced Micro Devices, Inc.*:

(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent;

(2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and

(4) whether the request is unduly intrusive or burdensome.

*Id.* (quoting *Intel*, 542 U.S. at 264-65) (quotation marks omitted). "In considering these factors, a district court may exercise its discretion in determining whether to grant discovery under § 1782." *In re Liverpool Ltd. P'ship*, 2021 WL 5605044, at *2.

**III.    Discussion**

Petitioner has not satisfied its burden of showing that the discovery it seeks is within Respondent's possession, custody, or control. A corporate parent's mere ownership of a subsidiary is not a dispositive factor in the inquiry, but rather one factor among several. *Sicav v. Wang*, No. 12 CIV. 6682, 2014 WL 2624753, at *5 (S.D.N.Y. June 12, 2014). "In determining a parent's control over a subsidiary in this context, district courts in this Circuit consider (1) the

3

degree of ownership and control exercised by the parent over the subsidiary, (2) a showing that the two entities operate as one, (3) demonstrated access to documents in the ordinary course of business, and (4) an agency relationship." *Id.* (citation omitted).

Judge Nathan considered a case with substantially similar facts in *In re Liverpool*. There, she assessed the following factors to determine whether the parent company, JPMorgan Chase & Co., exercised control over a wholly owned subsidiary:

> [A] parent has control over a subsidiary for discovery purposes when the parent is responsible for the compliance, risk management, governance, and financial reporting operations of the subsidiary, and there was *substantial* overlap between the management executives of the parent and the subsidiary.

2021 WL 5605044 at *3 (citations omitted) (emphasis in original). Applying this standard, Judge Cote recently considered similar facts in *In re Mun*, where the petitioner sought discovery from J.P. Morgan Chase relating to Cazenove's role as advisor in an acquisition involving a Bermuda company. *In re Mun*, No. 22MC163, 2022 WL 17718815, at *3 (S.D.N.Y. Dec. 15, 2022). Judge Cote concluded that while J.P. Morgan Chase had some involvement in Cazenove's operations, the facts did not permit a conclusion that the discovery sought was in J.P. Morgan Chase's possession, custody, or control:

> Petitioners point to J.P. Morgan Cazenove's 2021 Annual Report ("Report"). The Report states that "[c]ompliance is led by [JPMorgan Chase's] Chief Compliance Officer," but adds that J.P. Morgan Cazenove "holds primary ownership and accountability for managing compliance risks." A parent company's limited involvement with its subsidiary's operations, as described in the Report, is insufficient to establish the necessary control. Petitioners point out as well that JPMorgan Chase and J.P. Morgan Cazenove share a director and that a J.P. Morgan Cazenove director is an officer of JPMorgan Chase. This overlap is not sufficiently substantial to establish control. Lastly, Petitioners rely on the fact that J.P. Morgan Cazenove is a wholly-owned subsidiary of JPMorgan Chase. This fact also fails to show the requisite control.

*Id.* at *3.  Petitioner relies on many of the same facts in its briefing in this case, including its citation to Cazenove's 2021 Annual Report.  (ECF No. 19 at 11-12.)  It urges the Court not to adopt Judge Cote's conclusions, arguing that the court overlooked certain facts, including the following: that J.P. Morgan Chase compliance officials provide "review, monitoring, and oversight" of Cazenove's business operations; that J.P. Morgan Chase consolidates Cazenove's financial statements; that many of Cazenove's key policies and procedures are "set by or subject to the oversight of" J.P. Morgan Chase; that J.P. Morgan Chase's legal department provides legal services and advice to Cazenove; and that J.P. Morgan Chase "conducts its securities underwriting, dealing, and brokerage activities" through Cazenove.  (*Id.* at 13.)

These facts are insufficient to support a conclusion that differs from Judge Cote's recent decision.  First, Respondent attests that Cazenove is responsible for managing its own compliance risks and its financial reporting, directly undermining Petitioner's contentions.  (ECF No. 16 at 11-12.)  More generally, the fact that J.P. Morgan Chase exercises high-level legal and compliance oversight over Cazenove's business does not mean that it is "*responsible for* the compliance, risk management, governance, and financial reporting operations" of Cazenove; nor has Petitioner demonstrated a "*substantial* overlap" in the management executives of the parent and subsidiary.  This distinction is important.  Otherwise, courts would find the existence of control in every relationship between a multinational corporate parent and its wholly owned subsidiaries.  That outcome would contradict the rule that the parent-subsidiary relationship is not itself dispositive of the control analysis.

Even setting aside the ownership and control factor, Petitioner's argument fails on the second factor: there is no evidence supporting a conclusion that Cazenove and J.P. Morgan Chase operate as one, *i.e.*, that their "day-to-day operations are substantially in common with

each other" or that J.P. Morgan Chase operates as Cazenove's "alter ego." *Sicav*, 2014 WL 2624753, at *6-7. For example, a parent and subsidiary operating as one may have "shared employees, shared facilities, shared office space and utilized common practices and forms." *Id.* That is not the case here, given that Cazenove operates as a separately run, U.K.-based and UK-regulated entity with no footprint in the United States. (ECF No. 11.)

The Court's analysis need not venture further. Because Respondent does not have possession, custody, or control of the discovery in question, the Court must grant its motion to quash.

## IV. Conclusion

For the foregoing reasons, Respondent's motion to quash is GRANTED.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 11, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge